# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-362

**EOLA PROPERTIES, L.L.C.**

**VERSUS**

**BAYOU JACK LOGGING, L.L.C., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2012-8424-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Shannon J. Gremillion, Judges.

**REVERSED IN PART. AFFIRMED IN PART.**

**Jerold Edward Knoll**
**The Knoll Law Firm**
**Post Office Box 426**
**Marksville, LA 71351**
**(318) 253-6200**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Eola Properties, L.L.C.**

**Joseph J. Valencino, III**
**Burglass & Tankersley, L.L.C.**
**5213 Airline Drive**
**Metairie, LA 70001-5602**
**(504) 836-0416**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Kenneth Guillot**
    **Bayou Jack Logging, L.L.C.**
    **StarNet Insurance Company**

**AMY, Judge.**

The plaintiff entered into a stumpage contract for the removal of certain timber on a 180-acre tract in which it owned a one-half interest. The plaintiff filed this matter, seeking damages for timber trespass upon an allegation that the defendant logger and his limited liability company impermissibly cut timber beyond that designated in the contract. Following a jury trial and, upon entry of a judgment notwithstanding the verdict, the trial court found in favor of the plaintiff, awarding damages for the timber trespass and for loss of aesthetic value of the affected land. The trial court also awarded attorney fees. The defendants appeal. For the following reasons, we affirm in part and reverse in part.

### Factual and Procedural Background

The plaintiff in this case, Eola Properties, L.L.C., owns an undivided one-half interest in a 180-acre tract of timberland (Tract A) in Avoyelles Parish. The plaintiff entered into a September 30, 2010 "Timber Stumpage Sales Contract" with Bayou Jack Logging Company for the removal of certain hardwood on that property. The contract indicated that Bayou Jack Logging Co. was represented within that contract by Kenneth Guillot, its owner.

According to the record, Mr. Guillot began moving equipment to Tract A in May of 2011. Thereafter, cutting was conducted June through August, 2011. Pertinent to this timeline is Mr. Guillot's formation of Bayou Jack Logging, L.L.C. in June 2011.[1] Subsequent to the logging operations, however, William M. Tebow, a co-owner of and the land manager for Eola Properties, explained that he learned from John Earles, a neighboring farmer and Eola Properties' tenant, that there may have been a timber trespass on adjacent tracts of land solely owned by Eola Properties. Upon investigation, it was discovered that the Bayou Jack Logging

---

[1]The record reflects a June 2, 2011 filing date with the Secretary of State.

operations had been conducted not only upon the contracted lands in Tract A, but also on a fifty-acre tract (Tract B), situated to the North of Tract A and on a twenty-acre tract (Tract C), situated to the East of Tract A.

Eola Properties thereafter filed this matter against Mr. Guillot, Bayou Jack Logging, L.L.C. and its insurer. Eola Properties sought damages for timber trespass under La.R.S. 3:4278.1 [2] and damages associated with the alleged negligence leading to the trespass. The matter proceeded to trial, with the jury returning a verdict on a verdict sheet divided into Section 1, entitled "Timber Trespass" and Section 2, entitled "Negligence."

With regard to the timber trespass claim brought under La.R.S. 3:4278.1, the jury determined that "Bayou Jack Logging, LLC and/or its owner, Kenneth Guillot" removed the timber without the consent of Eola Properties. The jury

---

[2]Louisiana Revised Statutes 3:4278.1 was amended by 2011 La. Acts No. 226 during the timeline alleged in this case. In its present form, and in pertinent part, La.R.S. 3:4278.1(A) provides:

> A. (1) It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
>
> . . . .
>
> B. Whoever willfully and intentionally violates the provisions of Subsection A of this Section shall be liable to the owner, co-owner, co-heir, or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney fees and costs.
>
> C. Whoever violates the provisions of Subsection A of this Section in good faith shall be liable to the owner, co-owner, co-heir, or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner, co-owner, co-heir, or legal possessor of the trees.
>
> D. If a good faith violator of Subsection A of this Section fails to make payment under the requirements of this Section within thirty days after notification and demand by the owner, co-owner, co-heir, or legal possessor, the violator shall also be responsible for the reasonable attorney fees and costs of the owner, co-owner, co-heir, or legal possessor.

valued the subject timber at $23,941.89 and found that the defendants should have been aware that the "actions were without consent or direction of Eola Properties[.]" The jury further concluded that the defendants failed to make payment within thirty days of notification and demand for the timber. *See* La.R.S. 3:4278.1(D). Thus, the jury assessed attorney fees against the defendants in the amount of $3,986.33.

As for Eola Property's claim in negligence, the jury determined that the defendants were negligent in harvesting the trees on the fifty-acre and the twenty-acre parcels and that the negligence was a legal cause of the claimed damages. The jury assigned fifty percent of the fault to the defendants and fifty percent to Eola Properties.[3] The jury denied Eola Property's claim for loss of aesthetic value and the cost of clearing land.

In response to the motion of Eola Properties, the trial court entered a judgment notwithstanding the verdict. In that judgment, and with regard to the claim for trespass under La.R.S. 3:4278.1, the trial court: 1) increased the determined fair market value of the felled timber from $23,941.89 to $47,883.71 and calculated the treble damages awardable pursuant to La.R.S. 3:4278.1(C) to be $143,651.13; and 2) increased the award of attorney fees from $3,986.33 to $40,000.00.

With regard to the jury's verdict on Eola Property's negligence claim, the trial court entered a JNOV: 1) increasing the fault allocated to the defendants from fifty percent to ninety percent and, correspondingly, decreasing the fault assessed to Eola Properties from fifty percent to ten percent; and 2) awarding damages for loss of aesthetic value in the amount of $35,000.00 and subjecting the award to a

---

[3] The defendants alleged that Eola Properties was at fault in providing unreliable information regarding the location of its property lines.

3

ten percent reduction for the comparative fault assigned to Eola Properties. The trial court maintained the judgment in all other respects.

The defendants appeal, arguing that the trial court erred in granting the motion for judgment notwithstanding the verdict with regard to the apportionment of fault, appropriateness of damages for loss of aesthetic value, value of attorney fees proven, and appropriateness of the damages for the felled timber. The defendants also contend that the trial court erred in awarding damages against Mr. Guillot, individually.

## Discussion

*JNOV*

The defendants question each aspect of the trial court's granting of the motion for JNOV, asserting that the evidence developed at trial supported the jury's verdict. Each of the components of the JNOV, addressed below, requires reference to the considerations surrounding such a motion, provided by La.Code Civ.P. art. 1811. Such a motion should be "granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions." *Forbes v. Cockerham*, 08-0762, 08-770, p. 30 (La. 1/21/09), 5 So.3d 839, 857. On review, an appellate court uses the same criteria as the trial court and "must first determine whether the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict." *Id.* at 858. In the event that the appellate court determines that reasonable persons might reach a different conclusion, then the jury's verdict must be reinstated. *Id.*

We take the defendants' arguments out of order and first address those stemming from the claim under La.R.S. 3:4278.1.

4

Damages

In this case, the Timber Stumpage Contract entered into by Eola Properties pertained to timber on Tract A. However, it is largely uncontested that the subsequent work on the properties resulted in an overcut onto Tracts B and C, both wholly owned by Eola Properties. Thus, the petition was filed, in part under La.R.S. 3:4278.1, which the supreme court has described as a punitive statute enacted to impose a penalty upon those disregarding the property rights of timber owners. *Hornsby v. Bayou Jack Logging,* 04-1297 (La. 5/6/05), 902 So.2d 361. The defendants do not challenge the jury's determination that certain timber on Tracts B and C was cut without the permission of Eola Properties. Neither do the defendants challenge the jury's determination that the circumstances of the case indicated that the defendants "should have been aware that its actions were without [the] consent or direction of Eola Properties[,]" thus subjecting it to damages of three times the fair market value of the trees felled. *See* La.R.S. 3:4278.1(C).

Instead, the defendants focus on the jury's determination that the fair market value of the overcut timber was $23,941.89. In urging its motion for JNOV, Eola Properties suggested that the figure arrived at by the jury was in error as the only expert testimony regarding valuation of the timber assessed a greater value. In fact, the figure was approximately one-half of that arrived at by the expert forester for Eola Properties, Donald Baker. Mr. Baker testified that the subject timber was valued at $47,883.71. Dr. Nile Tahoop, the defendants' own expert in forestry, explained upon questioning by counsel for Eola Properties that the figure was reasonable, although he suggested that the actual amount could be "slightly less than that[.]" However, Dr. Tahoop stated that to "it would cost a lot of money to, to really determine that[.]" Thus, the figure opined by Mr. Baker was the only figure of fair market value provided by the record.

5

In entering the JNOV, the trial court determined that the jury's award of almost exactly one-half of the figure as to value demonstrated by the testimony (within a few cents) likely revealed that the jury considered its apportionment of one-half of the fault to Eola Properties. However, that apportionment of fault related to the second part of the jury verdict sheet, which pertained to negligence.[4] In this regard, the trial court found that the jury erred in merging the two theories of recovery and, accordingly, reformed the judgment to award $47,883.71 as the fair market value of the timber and, in turn, assess treble damages in the amount of $143,651.13.

While the defendants suggest that the jury's view was permissible under the evidence permitted, our review of the evidence supports the trial court's determination. Again, the figure of $47,883.71 was the only valuation offered in the record. Additionally, the figure arrived at by the jury does, in fact, suggest a reduction by fifty percent, the percentage of fault the jury subsequently found attributable to Eola Properties. However, as noted by the supreme court in *Hornsby*, 902 So.2d at 369, the plain language of La.R.S. 3:4278.1, a punitive statute, unambiguously indicates that "a person who is found to have unlawfully cut timber belonging to another without consent is liable to the owner for three

---

[4]In ruling on this aspect of the motion for JNOV, the trial court stated that:

> [The jury] took the fifty percent of the negligence finding and they applied it to the timber trespass statu[t]e. So they wholly confused the two elements, those two elements of the jury verdict form, those two elements of damages if any. They confused them and tried to fuss [sic] them together as using one, the damages in one. They took that and then they self applied [sic] a fifty percent rule, self applied [sic] a fifty percent deduction and placed that on the other element of damages. One element of damages as y'all know streamed from the negligence articles and the other element of the case or of damages streamed from the statutory guidance, the timber trespass statu[t]e and I don't think it's proper to fuss [sic] the two as the jury did or tried to do in this particular case. Not only did they fuse it together but they tried to apply a deduction based upon their finding of the, they believe fifty percent negligent [sic] on behalf of the plaintiff and I think that's probably harmless at this point whether I apply the fifty percent deduction or they do, but I just think crossing the line and applying it from a timber statu[t]e into the negligence section of the verdict form was improper. For those reasons, I'll grant it.

times the fair market value of the timber taken." Accordingly, any confusion between the statutory penalty authorized under La.R.S. 3:4278.1 and the negligence aspect of the case placed before the jury was error.

Finally, we find no merit in the defendants' contention that, in valuing the timber, the jury may have taken into account that timber was taken from Tracts B and C, but that a corresponding amount was not taken from Tract A. While true that the parties had contracted for the timber on Tract A (for the price of $40,000.00) and that timber may not have been, in fact, cut from Tract A, the defendants' argument confuses the issues. This suit was brought for the trespass on to Tracts B and C, wholly owned by Eola Properties and not subject to a stumpage contract. The fact that Tract A may have ultimately retained the amount of timber cut from Tracts B and C is of no moment and was not the subject of any question posed to the jury.

Accordingly, we find that the trial court appropriately entered the JNOV with regard to the appropriate valuation of the statutory damages.

Attorney Fees

As noted above, the jury found that the defendants should have been aware that the subject actions were without the consent or direction of Eola Properties and that the defendants further failed to make payment within thirty days of notification and demand. Thus, attorney fees were awardable under La.R.S. 3:4278.1(D). The jury awarded $3,986.33 for this item of recovery. On motion for JNOV, the trial court increased that figure $40,000.00. The defendants now challenge the trial court's actions arguing that Eola Properties failed to introduce evidence supporting the trial court's upward deviation of the fee. In particular, the defendants assert that Eola Properties failed to prove that the award was reasonable. *See Rivet v. State, Dep't of Transp. & Dev.*, 01-0961 (La. 11/28/01),

7

800 So.2d 777 (wherein the supreme court explained that, even in the presence of a contingency fee contract, an attorney is not entitled to recover a fee beyond that which is determined to be reasonable). *See also* La.Rules Prof.Conduct, Rule 1.5.

We find no error in the trial court's increase of attorney fees to the $40,000.00 range. With regard to its claim for attorney fees, Eola Properties presented testimony from an attorney who explained that he was familiar with the trespass involved, the property involved, and the work involved in this litigation. He stated that Eola Property's counsel provided assistance pursuant to a contingency fee arrangement that provided for an attorney fee of one-third of the amount of recovery in the event suit was filed. Despite that evidence, the jury awarded less than $4,000.00. The record supports a determination that this low figure was not reflective of a reasonable fee under the circumstances of this case.

Instead, the record indicates that Eola Properties' counsel developed the matter now before the court, secured expert and lay witnesses (two of which were procured and presented by deposition), and ultimately advocated during a two-day jury trial involving a distinct theory of recovery for timber trespass. Additionally, the attorney procured an award of $143,651.13 in treble damages under La.R.S. 3:4278.1, the statute under which an award of attorney fees is also available. Thus, the $40,000.00 figure assessed by the trial court is reasonable, albeit less than the one-third contingency agreement testified to at trial.

This argument lacks merit.

Negligence

The defendants' remaining arguments regarding the JNOV involve the trial court's reapportionment of fault and the award for loss of aesthetic value. However, in addressing this issue, an error in the judgment is apparent. As explained above, the plaintiff pursued both recovery under La.R.S. 3:4278.1 and under a general negligence theory of recovery. These theories were not presented as alternative theories. Instead, the two theories proceeded to the jury and, following the JNOV, resulted in a judgment allowing recovery under both statutory and civil code theories for Eola Properties. The parties submitted briefs on the propriety of this dual recovery following the oral argument in this matter. Upon consideration, we conclude that the trial court erred in entering judgment that permitted recovery for both.

Notably, in *Hornsby*, 902 So.2d 361, the supreme court considered a case in which the plaintiff sought recovery under La.R.S. 3:4278.1 and La.Civ.Code art. 2315. Citing its earlier jurisprudence in *First South Production Credit Association v. Georgia-Pacific*, 585 So.2d 545 (La.1991), the supreme court observed that it had previously "held that a landowner whose timber has been removed without his consent may recover pursuant to La.R.S. 3:4278.1 *or* under general tort principles set forth in La.Civ.Code art. 2315." *Id.* at 365 (emphasis added).[5] Thereafter, the

---

[5]In concurrence, Justice Weimer noted that the focus of La.R.S. 3:4278.1 is on the value of trees as timber, not on the value trees provide to the property upon which they are located. He explained that, therefore, "recovery under the statute is limited to the fair market value of the tree as timber- - not damages otherwise ordinarily associated with Article 2315 such as restoration value, mental anguish, or diminution in value of the real estate." Justice Weimer stated that:

> To summarize, a plaintiff may bring an action for damage to trees alleging, in the alternative, damages pursuant to Article 2315 or LSA-R.S. 3:4278.1 due to a tree being cut, felled, destroyed, removed, or diverted. However, one cannot combine Article 2315 damages and the treble damages allowed by LSA-R.S. 3:4278.1 as to the value of a tree because that would result in duplication of damages. Recovery can only be had for the value of the tree based on one provision or the other, not both. If one proceeds under LSA-R.S. 3:4278.1, damages are limited to the fair market value of the tree as timber. . . .

9

supreme court determined that the record developed in the case before it did not support a finding that an award for restoration costs in excess of the actual market value of the land and the trees cut was justified. *Id.* Thus, the supreme court reversed the award of damages previously awarded under the principles of general tort law and entered an alternative award for damages for violation of La.R.S. 3:4278.1. *See also Sagnibene v. Roy O. Martin*, 10-1331 (La.App. 3 Cir. 6/1/11), 68 So.3d 32 (wherein a panel of this court cited *Hornsby* in affirming an award of statutory damages, but in reversing an award of damages made under general tort principles). *But see Hooper v. Wisteria Lakes Subdivision,* 13-50 (La.App. 1 Cir. 9/13/13), 135 So.3d 9; *Mathews v. Steib*, 11-0356, p. 8 (La.App. 1 Cir. 12/15/11), 82 So.3d 483, 488 (wherein the first circuit, without reference to *Hornsby*, found that "in addition to the amount recoverable under La.R.S. 3:4278.1, damages are recoverable, if supported by the record, for:  the costs of removing stumps and clearing the land after a timber trespass, . . . reforestation, . . . loss of aesthetic value/buffer zone, . . . .and mental anguish"), *writ denied*, 12-0106 (La. 3/23/12), 85 So.3d 90.

In this case, it was not error for Eola Properties to proceed under both, alternative theories of recovery.  However, in light of supreme court jurisprudence, we find that it was error for the trial court to enter judgment, permitting recovery for both theories.  Here, and even in the presence of the trial court's determination that damages for loss of aesthetic value had been proven, the statutory penalties exceeded those available under the general negligence theory.  Accordingly, the trial court was required to enter judgment as to the statutory damages alone. Below, we reverse the judgment to the extent it reflected an award for loss of

Alternatively, if one proceeds under Article 2315, the full measure of damages is available depending upon the facts and circumstances of each case, but treble damages are not available.

10

aesthetic value. This conclusion pretermits consideration of the defendants' arguments regarding apportionment of fault and burden of proof regarding the tort claim.

*Personal Liability*

In their remaining assignment of error, the defendants question the entry of judgment against both Mr. Guillot, personally, and Bayou Jack, LLC. The defendants note supreme court jurisprudence indicating that if a limited liability company member's conduct "was required by, or was in furtherance of, a contract between the claimant and the LLC, that situation weighs against holding the member personally liable for the conduct." *Ogea v. Merritt*, 13-1085, p. 21 (La. 12/10/13), 130 So.3d 888, 904.

Undoubtedly, La.R.S. 12:1320(B) provides that: "Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company." However, the factual background of this case does not clearly fit within the above provision. As stated above, Bayou Jack Logging, L.L.C. did not exist at the time Mr. Guillot entered into the stumpage contract on behalf of Bayou Jack Logging Co. In fact, given the general timeline of events, it is not clear at what point in the logging process the L.L.C. was recorded. Neither is it clear at what point Mr. Guillot took the actions that have been one of the issues in this case, i.e., establishing the property boundaries to guide the logging operations that led to the timber trespass. In light of this background, we find no error in the trial court's decision to cast Mr. Guillot in judgment, along with Bayou Jack Logging, L.L.C..

This assignment lacks merit.

**DECREE**

For the foregoing reasons, the trial court's judgment notwithstanding the verdict for loss of aesthetic value to the plaintiff-appellee, Eola Properties, L.L.C., is reversed. The correlative apportionment of fault is also reversed. The remaining aspects of the trial court's judgment notwithstanding the verdict are affirmed. Costs of this proceeding are assessed equally to the defendants—appellants, Bayou Jack Logging, L.L.C., Kenneth Guillot, and StarNet Insurance Company, and to the plaintiff-appellee.

**REVERSED IN PART. AFFIRMED IN PART.**